IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEIDRE OLIVER, | CASE NO. 3:24-cv-425 |
| Plaintiff, | DISTRICT JUDGE JEFFERY J. HELMICK |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff Deidre Oliver filed a complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying disability insurance benefits. Doc. 1. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural background**

In November 2021, Oliver filed an application for disability insurance benefits, alleging a disability onset date in May 2021.[1] Tr. 81. In pertinent part,

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

Oliver alleged that she was disabled and limited in her ability to work due to idiopathic thrombocytopenic purpura (ITP),[2] fatigue, plantar fasciitis in both feet, torn abductor brevis tendon surgery, insomnia, and depression. *Id.* The Commissioner denied Oliver's application initially and upon reconsideration. Tr. 100, 114.

In August 2022, Oliver requested a hearing. Tr. 123. Administrative Law Judge (ALJ) Dianne Mantel held a telephonic hearing in December 2022. Tr. 39. Oliver appeared, testified, and was represented by counsel at the December 2022 hearing. *Id.* Qualified vocational expert Sherry Ronning also testified. Tr. 68. In April 2023, the ALJ issued a written decision, which found that Oliver was not entitled to benefits. Tr. 14–38.

In June 2023 Oliver appealed the ALJ's decision to the Appeals Counsel. Tr. 187. In February 2024, the Appeals Counsel denied Oliver's appeal, Tr. 1, making the ALJ's April 2023 decision the final decision of the Commissioner. Tr. 14–38, see 20 C.F.R. §404.981.

Oliver timely filed this action in March 2024. Doc. 1. In it, she asserted one issue for the Court's review:

---

[2]    ITP is a blood disorder that involves a decrease in platelets in the blood, which is the result of the immune system attacking the body's platelets. The decrease in platelets causes easy bruising and internal and external bleeding. Johns Hopkins Medicine, Conditions and Diseases, Idiopathic Thrombocytopenic Purpura, https://www.hopkinsmedicine.org/health/conditions-and-diseases/idiopathic-thrombocytopenic-purpura **[https://perma.cc/W74U-JLN9].**

> The ALJ's finding at step four of the sequential evaluation process fails to be supported by substantial evidence because the record supports a greater limitation in social interaction than found by the ALJ; likewise, the RFC determination is unsupported by substantial evidence because it is devoid of any mental limitation to reflect the ALJ's own findings at step two of the sequential evaluation process.

Doc. 7, at 3.

**Evidence**

*1.    Personal, Educational, and Vocational Evidence*

Oliver was approximately 60 years old on her alleged onset date. Tr. 81. She graduated from high school and attended some college, Tr. 48, and reported past work as a compliance officer and warehouse manager. Tr. 216.

*2.    Medical Evidence*[3]

In August 2020, Oliver saw Sarah N. Klotz, APRN-CNP,[4] for an annual examination. Tr. 362–363. Nurse Klotz noted that Oliver had both normal mood and affect and that her "affect is tearful." *Compare* Tr. 364, *with* Tr. 366.

---

[3]    The recitation of medical evidence is not intended to be exhaustive and is generally limited to the evidence cited in the parties' briefs.

[4]    The acronym "A.P.R.N." stands for Advance Practice Registered Nurse, which is a title that includes the professional designation of "C.N.P." which stands for Certified Nurse Practitioner. A Nurse Practitioner has completed advanced training to diagnose and prescribe medication and must have completed a graduate degree program and become board certified. *See* CLEVELAND CLINIC, *Health Library: Articles: Nurse Practitioner*, https://my.clevelandclinic.org/health/articles/24651-nurse-practitioner [**https://perma.cc/FZ8J-RETS].**

Nurse Klotz diagnosed Oliver with anxiety and "[r]ecommended stress management and focus on self-care." Tr. 364.

From August 2022 to November 2022, Christina Clemens, LISW, treated Oliver for behavioral health concerns. Tr. 1116–1173. Oliver reported the following symptoms: "feeling nervous, anxious, or on edge, excessive anxiety and worry about specific stressors, avoidance of situations that provoke fear and anxiety, and low self-esteem." Tr. 1135. She also was noted as feeling "very uncomfortable in social settings particularly around people she perceives to have a higher status in some way from her." Tr. 1135. She described "rampant bullying" at work which she attributes to be the cause of decreased self-esteem and increased anxiety. Tr. 1135. Oliver stated that "she finds herself spending a lot of time alone, avoiding social contact particularly where she anticipates the expectation of creating a connection with others out of a fear of rejection" and that she "experiences low social trust" with feelings that "she doesn't belong in any group or culture anymore." Tr. 1135. LISW Clemens diagnosed Oliver with social anxiety disorder. Tr. 1137.

In September 2022, Oliver was hospitalized at Flower Hospital for an episode of amnesia. Tr. 654. She presented to the emergency room with memory loss and records from this encounter showed that she was a poor historian due to her condition. Tr. 655. Hospital records also described that Oliver repeated herself during the examination. *Id.* She stated that she forgot most of the events that occurred the day before. Tr. 661. She also reported

4

migraines that occur every two weeks with milder headaches once a week mostly behind her right eye. *Id.* Photophobia and phonophobia were present with her headaches. *Id.* A doctor diagnosed Oliver with acute encephalopathy and "possibly global transient amnesia." Tr. 674. An EEG was abnormal, indicating moderate diffuse encephalopathy[5] and sedative medication use. Tr. 702. Another EEG revealed findings of mild background slowing consistent with diffuse bihemispheric dysfunction. Tr. 702.

At a September 2022 appointment with LISW Clemens, Oliver discussed the episode of amnesia earlier that month and LISW Clemens noted that Oliver experienced great distress due to this condition. Tr. 1128. In November 2022, Oliver reported difficulty completing a trip to California to help her son, during which she experienced great emotional and physical difficulty. Tr. 1119. Later in November 2022, she also described recent increased distress due to fears about her son's wellbeing. Tr. 1116. LISW Clemens noted that Oliver discussed "intense fear over any thoughts of trying to work again on top of her medical conditions." Tr. 1116. LISW Clemens recorded that Oliver's "affective and emotional state appeared tearful and anxious." Tr. 1117.

---

[5]     Encephalopathy is a change in how the brain functions, which may be caused by a variety of conditions such as infection or an underlying condition. CLEVELAND CLINIC, *Diseases & Conditions, Encephalopathy*, https://my.clevelandclinic.org/health/diseases/encephalopathy [**https://perma.cc/G9BE-4G3R**].

In October 2022, Oliver saw Drew R. Oostra, M.D., at the Northwest Ohio Hemophilia Center for follow up. Tr. 645. Dr. Oostra noted that "since [her] last visit, [Oliver] has not been doing well" and summarized Oliver's report about her hospital treatment in September 2022. Tr. 645.

In October 2022, Oliver saw Bashar Saour, M.D. Tr. 634. Dr. Saour noted Oliver's hospitalization in September 2022 for altered behavior with short-term memory issues. *Id.* Oliver described difficulty sleeping and getting only three hours of sleep per day. *Id.* She endorsed stress in her life due to her son going through a divorce, among other stressors, but stated that "she deals with stress well." *Id.* Oliver reported that she "has recently taken a package to leave her job due to her ITP, and also noted her insomnia." *Id.* Oliver stated that she previously attempted counseling but did not have a positive experience and was not interested in seeing someone else. *Id.* Dr. Saour referred Oliver to a sleep specialist to discuss chronic sleep issues and instructed her to follow up with neurology as needed. Tr. 641.

In December 2022, George B. Gennaoui, D.O., assessed that Oliver' symptoms "can be explained by fibromyalgia." Tr. 1174.

*Psychological Consultative Examination*

In April 2022, Daniel K. Watkins, Ph.D., conducted a psychological consultative examination at the state agency's request. Tr. 1066–1072. Oliver reported that she was treated psychiatrically "off-and-on" up until about 10 years before her consultative examination. Tr. 1068. Oliver stated that she was

6

previously prescribed medication for depression and that she was "unnecessarily 'pink slipped' for psychiatric evaluation" which resulted in an evaluation at Rescue Crisis. *Id*. Oliver denied being suicidal at the time of her evaluation at Rescue Crisis. *Id.* Oliver also denied ever being hospitalized for psychiatric treatment. *Id.*

At times, Dr. Watkins identified that Oliver's speech and thought process was circumstantial and overinclusive, but he had no difficulty understanding her speech and noted that her thought processes appeared logical, coherent, and goal directed. Tr. 1069. Oliver appeared to be mildly to moderately anxious and upset, but she reported crying spells "only when I talk about work." Tr. 1069. Oliver stated that she has always had difficulty sleeping. Tr. 1069. Oliver reported absentmindedness and that she sometimes lost her train of thought. Tr. 1069.

Dr. Watkins found that Oliver's condition was consistent with some trauma-related anxiety, stemming from her previous workplace. Tr. 1070. Dr. Watkins functional assessment was that Oliver: "retains the capacity to understand, remember, and carry out concrete or fairly abstract instructions of at least simple or moderate complexity;" has the "[a]bility to sustain attention and concentration … for purposes of an ordinary eight-hour day given appropriate tasks falling within her physical limitations;" "had some difficulty coping with subordinates as a supervisor … was not very good at exerting authority … and might do best in a work situation where she was not

7

in charge;" and, "appears capable of coping with a low-pressure work setting." Tr. 1071.

*State Agency Consultants*

In April 2022, state agency psychological consultant Paul Tangeman, Ph.D., reviewed Oliver's record and applied the psychiatric review technique (PRT) to find that she would have mild limitations in her ability to interact with others, concentrate, persist, or maintain pace or adapt and manage oneself. Tr. 85. He found no limitation in her ability to understand, remember, or apply information. Tr. 85. Dr. Tangeman assessed no mental residual functional capacity. Tr. 88. These findings were affirmed on reconsideration by Kristin  Haskins, Psy.D.. Tr. 94, 97.

*Hearing Testimony*

Oliver testified that she had not worked since February 2021 and that her previous position was as a compliance specialist at an oil refinery. Tr. 49. Oliver described that as a compliance specialist, she would "engage with the people and together with the subject matter experts" they would deal with any problems that arose with compliance. Tr. 50. She stated that her job was mostly seated in front of the computer, but she would have "to go meet with people," which required her to walk to their office or to use company transport. Tr. 50–51. Oliver stated that she sat "at least five" hours a day, she spent the other two to three hours moving or standing, and that the heaviest weight she had to carry at work was 10 pounds. Tr. 51.

8

Oliver described that she "will sit in the recliner for a big part of the day" and that she will have TV or music on in the background. Tr. 53–54. She explained that she does not keep track of the TV though because she is "very ADD" and "it's very hard to sit and actually watch a movie." Tr. 54. She would always have to bring work home because she needed additional time to complete it. Tr. 55.

When asked how long she experienced being easily distracted, Oliver explained that she's "always had the ADD, all the distraction. But I seem to have functioned in it." Tr. 54. She stated that the fact of her ADD became apparent when she was working because she had difficulty staying focused on or finishing a project. Tr. 54. Oliver described that, since the COVID-19 pandemic, she would often work 14 to 16 hours a day because she would get so distracted with movement around her when working at home. Tr. 55.

Oliver stated that she experienced fatigue and pain due to her ITP. Tr. 60. She explained that because she will sometimes go two or three days without more than an hour or two of sleep a night, her lack of sleep is part of her fatigue. Tr. 60. Oliver stated that her fatigue previously caused her to nod off at work, which often caused her to redo or double check her work. Tr. 61. She also explained that her lack of sleep would cause her to be "snippy with people," Tr. 62, and she feared that her coworkers would tell her boss that she was being uncooperative or difficult, Tr. 63.

9

*Vocational Expert*

Qualified vocational expert Sherry Ronning also testified at the hearing. Tr. 68–78. Ronning testified that an individual with the same age, education, and past work experience as Oliver and with the hypothetical limitations described by the ALJ could perform Oliver's past relevant work as a compliance officer. Tr. 69. The limitations described in relation to the ALJ's first hypothetical individual are the same as included in Oliver's ultimate residual functional capacity (RFC).[6] *Compare* Tr. 69, *with* 26. Ronning responded that a second hypothetical individual who could "understand, remember and carry out work instructions and tasks as well as maintain attention during the performance of those duties[,] … use judgment necessary for the performance of their work duties, respond appropriately to usual situations, and deal with occasional change the work setting … and respond appropriately to the general public, supervisors and coworkers" could not perform Oliver's past relevant work. Tr. 70. Ronning stated that employer tolerance for off-task behavior is ten percent, and employer tolerance for absenteeism is no more than six days per year. Tr. 71. On examination by Oliver's representative, Ronning testified that a hypothetical individual, as described by the ALJ, with the additional

---

[6]     An RFC is an "assessment of" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Circ. 2002). Essentially, it is the Social Security Administration's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

limitation "that the person could only occasionally interact with others" would not be able to perform the relevant past work. Tr. 72.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant has not engaged in substantial gainful activity since May 19, 2021, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: obesity; right knee osteoarthritis and chondrocalcinosis; left hip greater trochanteric bursitis; bilateral plantar fasciitis with retracted fascial stump/tear and peroneal brevis tear with tendinopathy, status-post January 2018 endoscopic fasciotomy and peroneal tendon repair and December 2021 endoscopic plantar fasciotomy and peroneal brevis tear repair; thrombocytopenia; and fibromyalgia (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: She can sit for 6 hours out of an 8-hour workday and can stand and/or walk for 4 hours out of an 8-hour workday. The claimant can never climb ladders, ropes,

or scaffolds and can frequently climb ramps and stairs, balance, crouch, kneel, stoop, and crawl. With bilateral lower extremities can occasionally push and/or pull or operate foot controls. She can have occasional exposure to concentrated levels of dust, fumes, odors, gases, poor ventilation, and other pulmonary irritants. She cannot work around unprotected heights or unprotected moving mechanical machinery. She can occasionally perform any commercial driving.

6.  The claimant is capable of performing past relevant work as a compliance officer (DOT 168.167–062; SVP 6). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from May 19, 2021, through the date of this decision (20 CFR 404.1520(f)).

Tr. 19–33.

### Standard for Disability

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C.
§ 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a
disability determination:

> 1. Is the claimant engaged in substantial gainful
>    activity? If so, the claimant is not disabled.
>
> 2. Does the claimant have a medically
>    determinable impairment, or a combination of
>    impairments, that is "severe"? If not, the
>    claimant is not disabled.
>
> 3. Does the claimant's impairment meet or equal
>    one of the listed impairments and meet the
>    duration requirement? If so, the claimant is
>    disabled. If not, the ALJ proceeds to the next
>    step.
>
> 4. What is the claimant's residual functional
>    capacity and can the claimant perform past
>    relevant work? If so, the claimant is not
>    disabled. If not, the ALJ proceeds to the next
>    step.
>
> 5. Can the claimant do any other work
>    considering the claimant's residual functional
>    capacity, age, education, and work
>    experience? If so, the claimant is not disabled.
>    If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d
417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the
burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden
shifts to the Commissioner at step five "to prove the availability of jobs in the
national economy that the claimant is capable of performing." *Id*. "The

13

claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the

Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

Oliver states one legal issue, but closer evaluation reveals she is actually raising two distinct issues. *See* Doc. 7, at 1.[7] First, she alleges that the ALJ's findings at Step Four are not supported by substantial evidence, because the record supports greater limitations related to social interaction. Doc. 7, at 1. Second, Oliver asserts, the RFC determination is not supported by substantial evidence because it does not reflect the ALJ's Step Two findings related to mental limitations. *Id.* These two issues are related, but they require separate evaluation to be fully addressed.

Oliver's first subheading actually addresses the second argument contained in her issue presented: that the ALJ failed to properly explain why the mild limitations found at Step Two were not incorporated into her RFC in Step Four. Doc. 7, at 9. To this end, she asserts that, under SSR 98-6p, the ALJ

---

[7]     The page numbers used in reference to Doc. 7 are based on the pagination in the footer of each page of the brief, not the pdf pagination for the document.

must "consider all of the limitations imposed by [her] impairments, even those that are not severe." Doc. 7, at 10 (citing SSR 96-8p).

As to this argument, at Step Two, the ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). The evaluation of impairments at Step Two is "a *de minimus* hurdle, intended to 'screen out totally groundless claims.'" *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 597 (6th Cir. 2018) (citations omitted). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities[.]" *See* 20 C.F.R. §404.1520(c). Once an ALJ finds that a claimant has at least one severe impairment, the ALJ must consider "the limitations and restrictions imposed by *all* of an individual's impairments, even those that are not severe." *Kestel*, 756 F. App'x at 597 (quoting *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (emphasis added and internal citations omitted)). Harmless error evaluation applies to an ALJ's failure to find additional severe impairments at Step Two, so long as the ALJ considered all impairments at the remaining steps of the sequential evaluation. *Id.* (citations and quotations omitted). But, where an ALJ fails to consider the potential functional limitations arising out of non-severe impairments, harmless error analysis will not apply. *See Baumiller v. Comm'r of Soc. Sec.*, 627 F. Supp. 3d. 885, 806 (N.D. Ohio 2022).

As an initial matter, Oliver makes no discernable argument that the ALJ failed to find additional severe impairments at Step Two. *See generally* Doc. 7. Instead, Oliver argues "[t]he ALJ did not consider [her] non-severe

16

impairment of anxiety, unspecified trauma and stressor related disorder, or diffuse bi-hemispheric dysfunction" during the sequential analysis. Doc. 7, at 10. But this statement, without more, does not show that the ALJ erred. In this portion of her argument, Oliver provides no citation to the ALJ's analysis of her non-severe mental impairments at Step Four. *See* Doc. 7, at 10–11. Instead, Oliver simply cites the portion of the ALJ's decision in which the ALJ articulates her RFC determination. *See id.* Despite a lack of helpful citation, Oliver asserts that the ALJ failed to "resolve the inconsistency between his own findings at Step 2 and his finding that [her] mental limitations would have no effect on [her] ability to perform work-related activities." Doc. 7, at 10.

Oliver continues, in somewhat of an aside, arguing that the ALJ's failure to include mental functional limitations in her RFC was "particularly erroneous" because "[e]ven a slight impairment in any of Plaintiff's mental faculties would undoubtedly have some impact on her ability to perform skilled work, as even the most basic mental limitation to unskilled work would preclude performance of this job." Doc. 7, at 11. But Oliver cites nothing to support this assertion, so she's forfeited the argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal citations omitted).

17

The ALJ stated that she considered all of the evidence and the Court presumes that to be the case unless Oliver can show otherwise. *See* Tr. 25–26 (stating that the ALJ considered "all symptoms" in accordance with the governing regulations); *NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 163 (2d Cir. 2021) ("We … presume the agency has considered all the evidence and properly discharged its duties."); *see also United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."). Oliver has presented nothing to substantiate her claims that the ALJ did not consider the evidence of her non-severe impairments or that would lead the Court to discount the ALJ's statement that she complied with applicable regulations.

Review of the ALJ's decision further demonstrates that the ALJ did consider Oliver's non-severe mental impairments when crafting her RFC and specifically articulated the reasons why those non-severe impairments did not justify the inclusion of mental functional limitations. *See* Tr. 31–32 (explaining why the record supported "no more than mild limitation" related to Oliver's non-severe mental health impairments, articulating the discussion from Finding Three that Dr. Watkins' opinion were considered and discussing that finding again, and explaining why Oliver's subjective statements concerning her mental health conditions do not justify inclusion of functional limitations).

So Oliver's argument that the ALJ failed to consider all impairments, severe and non-severe, in crafting Oliver's RFC lacks merit.

Next, within the same argument section, Oliver takes issue with the ALJ's Step Five findings and appears to challenge Ronning's testimony. Doc. 7, at 11. But nothing in Oliver's issue presented, or this argument subheading, indicate she would raise an issue related to Step Five or Ronning's testimony. Her arguments to that end are thus forfeited per the Court's initial order. *See* Doc 4, at 3 ("Requirements for Briefs"). Moreover, even if this argument were considered, it lacks merit.

Oliver states that the "VE did not produce any testimony concerning any other work Plaintiff might be able to perform in the national economy." Doc. 7, at 11. She adds that "the VE testified there were no transferable skills from Plaintiff's past relevant work to any other work in the national economy." *Id.* (citing Tr. 69). But this argument ignores the ALJ's decision: the ALJ stated and showed that she considered the entirety of the record, Tr. 25–26, 31–32, and concluded that Oliver was capable of performing her past work, Tr. 32. The ALJ thus found that Oliver was not disabled or entitled to benefits. Tr. 32–33. Oliver has neither provided any citation to support her apparent contention that it was an error for the ALJ not to question Ronning regarding other work available in the national economy, nor has she explained why her attorney failed to object at the hearing or why her attorney could not have asked the question she faults the administrative law judge for failing to raise.

19

*See* Doc. 7, at 11. And it would be confusing to find error on this basis, i.e. failure to question about other job availability, let alone an error supporting remand, because the ALJ here found Oliver capable of performing her own past employment. Tr. 32–33.

As a final point, Oliver asserts that this case is similar to the decision in *Richardson v. Saul*, 511 F. Supp. 3d 791, 798 (E.D. Ky. 2021), and thus, "[r]emand is required, as in *Richardson*." Doc. 7, at 11–12. First, because *Richardson* is not controlling authority, the Court is not "required" to remand based on that decision. Second, the facts and reasoning of *Richardson* are distinguishable, as the Commissioner highlights in his response. *See* Doc. 9, at 18. For example, after affording "great weight" to a medical opinion that found "mild to moderate" impairments in certain areas, the ALJ in *Richardson* provided no discussion as to why it excluded any mental limitations from the RFC. *Richardson*, 511 F.Supp.3d at 799. Here, however, the ALJ explained in her Step Four evaluation that Dr. Watkins opinion was "not very persuasive" and explained that Dr. Watkins' finding that Oliver be limited to "low-pressure work" was not consistent with other evidence. *See* Tr. 31. Beyond this discussion, the ALJ here found persuasive only the opinions that found no more than mild limitations and made no mental RFC findings related to Oliver's non-severe mental conditions. *Id.*; *see also* Tr. 84, 88.

At bottom, the fact that Oliver believes mental limitations should have been, but were not, included in the ALJ's assessment does not mean that the

ALJ erred by excluding them. The ALJ expressly stated that she included her Step Two findings when crafting Oliver's RFC and further offered analysis into what evidence supported her RFC determination at Step Four. *See* Tr. 27, 31. The ALJ, thus, adequately articulated her consideration of the evidence and the reasoning behind Oliver's RFC.

Oliver's second subheading addresses the first argument contained in her issue statement: that the ALJ's decision not to include mental limitations in the RFC is not supported by substantial evidence. Doc. 7, at 10. In support of this argument, Oliver states that "review of the record as a whole reveals a greater level of limitation, especially in the area of social interaction, than found by the ALJ." Doc. 7, at 13. She proceeds to highlight certain findings from Dr. Watkins and LISW Clemens along with her own testimony to support her contention that the record supports an RFC with mental limitations. *See* Doc. 7, at 13–15. But simply citing her mental health diagnosis or other evidence of record, does not show that the ALJ's decision was unsupported by substantial evidence. *See Jones*, 336 F.3d at 477; *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [an impairment] ... says nothing about the severity of the condition.").

Oliver also asserts that the ALJ failed to "conduct a proper supportability analysis" when he found Dr. Watkin's consultative examination opinion was "not very persuasive." Doc. 7, at 11. There is no indication in either this argument subheading, or Oliver's issue statement, that she would

21

challenge the ALJ's compliance with regulations mandating the evaluation of the supportability and consistency factors. So this argument is again forfeited for failure to comply with the Court's initial order. *See* Doc. 4, at 3.

And, even if it weren't forfeited, it lacks merit. Oliver provides no support for her argument that the ALJ's rejection of an opinion "based upon the reliance of self-reports is not a proper supportability analysis." *Id.* Instead, she merely cites a decision in which the Sixth Circuit generally stated that psychiatric diagnosis are inherently subjective. *Id.* (citing *James v. Liberty Life Assur. Co. of Boston*, 582 Fed. App'x 581, 589 (6th Cir. 2014)). This decision does not support Oliver's substantial-evidence argument; it arose in an different legal context unrelated to the evaluation of social security benefits claims.

Further, review of the ALJ's decision belies Oliver's argument that the ALJ failed to explain why her self-reports were insufficient to support the inclusion of mental functional limitations in Oliver's RFC. *See* Tr. 31–32 (explaining that the ALJ "has carefully considered [Oliver's] statements concerning her impairments and their impact on the ability to perform work activity and finds the allegations are somewhat inconsistent with the other medical evidence of record" and then providing examples of conflicts between the objective evidence and Oliver's subjective statements). The ALJ's decision, when viewed as a whole, shows that the ALJ considered the entire record, explained what evidence was or was not persuasive, and rendered an RFC

determination that was supported by substantial evidence. Oliver's arguments thus to the contrary lack merit.

In a final argument subheading, Oliver asserts that "the error is harmful here." Doc. 7, at 15. As described above, the ALJ did not err. So this argument is baseless.

**Conclusion**

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: September 24, 2024

                                    */s/ James E. Grimes Jr.*
                                    James E. Grimes Jr.
                                    U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).